UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| 384 Boxes of Counterfeit N95 Masks, | § | |
| Defendant. | § | |

VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS

Now comes Plaintiff, the United States of America, by its attorneys Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas, and Jon Muschenheim, Assistant United States Attorney, and files this action for forfeiture in rem against the above-entitled Defendant property. The United States respectfully alleges on information and belief as follows:

JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C §§ 1345 and 1355. The Defendant Property is located in the Southern District of Texas and is within the jurisdiction of this Court. This Court also has jurisdiction over this particular action under 18 U.S.C § 2323(a) (civil forfeiture authority – counterfeit goods).

2.      This Court has *in rem* jurisdiction over the Defendant Property pursuant to: (i) 28 U.S.C § 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and (ii) 28 U.S.C § 1355(b)(1)(B), incorporating 28 U.S.C § 1395, because the action accrued in this district.

THE DEFENDANT PROPERTY SUBJECT TO FORFEITURE

3.      The Defendant Property is described as follows:

384 boxes of counterfeit 3M N95 masks, model 1860S.

1

## STATUTORY BASIS FOR FORFEITURE

4.      The Defendant Property is subject to forfeiture to the United States under 18 U.S.C § 2323(a), which provides for the forfeiture of counterfeit property that is made or trafficked and/or used in violation of 18 U.S.C. Section 2320.

## SUMMARY OF CASE

5.      On August 27, 2020, Q2 Solutions entered into a vendor/supplier agreement with University of Texas Medical Branch – Galveston (UTMB Galveston) to supply N95 masks. In or about the month of December 2020, UTMB Galveston received a shipment of 3M branded N95 protective masks from Q2 Solutions. The masks purport to be 3M branded N95 protective masks, but they are not. UTMB Galveston paid $225,720.00 to Q2 Solutions. To date, UTMB Galveston has not been repaid for any part of this.

## BACKGROUND

6.       Q2 Solutions operates multiple retail websites used for the sale of PPE (Personal Protection Equipment).  Q2 Solutions sold counterfeit PPE to at least 20 medical facilities, including University of Texas Medical Branch – Galveston (UTMB Galveston).

## FACTS OF THE CASE

7.      On August 27, 2020, Q2 Solutions entered into a vendor/supplier agreement with UTMB Galveston.

8.      On or about December 3, 2020, UTMB Galveston sent a purchase order to Q2 Solutions for the proposed purchase of 50,160 N95 3M Masks, Model 1860S, for a unit cost of $4.50 each..

9.      On December 10, 2020, Q2 Solutions sent UTMB Galveston an invoice -0703 for $225,720.00 to be paid by December 11, 2020.

10.     On December 11, 2020, UTMB paid Q2 Solutions $225,720.00 for the masks.

11.     In or about the month of December 2020, UTMB Galveston received a shipment of counterfeit 3M branded N95 protective masks.

12.     In January 2021, the hospital contacted Q2 Solutions regarding the counterfeit masks received the previous month. On January 28, 2021, Q2 Solutions submitted documentation via email to a UTMB representative claiming chain of custody of the masks back to 3M.

13.     That same day, a UTMB representative received confirmation from the 3M fraud department confirming Q2 Solutions was not an authorized 3M dealer and detailing the 3M list price of $1.27/mask.

14.     On or about February 18, 2021, a collateral request was received from HSI Philadelphia requesting assistance regarding an open counterfeit N95 mask investigation. During the same time frame, HSI Galveston opened an investigation and spoke with UTMB Director of Material Management and confirmed UTMB had ordered and received approximately five pallets of N95 protective masks.

15.     In or about March 2021, photos of the N95 protective masks were sent to the Centers of Excellence and Expertise (CEE) for appraisal. The CEE confirmed that the N95 protective masks had a value of $58,064.40.

16.     By March 2021, about 4,440 masks had been distributed to and utilized by hospital staff and 384 boxes containing approximately 45,720 masks remained. Four pallets containing approximately 45,720 counterfeit N95 protective masks were prepared for pick up.

17.     On or about March 29, 2021, 384 boxes of counterfeit N95 masks were seized

from UTMB Materials Management, 205 13th Street, Galveston, Texas, 77555.

18.     The four pallets are currently held in Laredo, Tx.

19.     Q2 Solutions currently has complaints filed against them alleging the fraudulent

sale of counterfeit masks. On June 28, 2021, a Complaint of Forfeiture was filed in the

District of Connecticut (Case No. 3:21-CV-884) against "535 Boxes of Counterfeit 3M

1860 and 1860S Face Masks." On August 26, 2021,  a Complaint in Forfeiture was filed

in the Northern District of Ohio (Case No. 1:21-CV-1660) against "252,640 Counterfeit

3M Branded Model 1860-S Respirators/Masks" and "94,000 Counterfeit 3M Branded

Model 1860 Respirators/Masks Sold to the Cleveland Clinic by Q2 Solutions."

20.     According to 3M, authentic 3M N95 model 1860S respirators/surgical masks:

    a.)     are NIOSH (National Institute for Occupational Safety and Health)

        approved N95 respirators and are FDA (Food and Drug Administration)

        cleared for use as surgical masks;

    b.)     meet CDC (Centers for Disease Control and Prevention) guidelines for

        Mycocobacterium tuberculosis exposure control;

    c.)     have 99% bacterial filtration efficiency according to the American Society

        for Testing Materials F2101;

    d.)     as a disposable particulate respirator, are intended to help reduce wearer

        exposure to certain airborne particles including those generated by

        electrocautery, laser surgery, and other powered medical instruments;

    e.)     as a surgical mask, are designed to be fluid resistant to splash and spatter

        of blood and other infections materials;

    f.)     help provide respiratory protection against certain airborne biological

particles;

g.) are disposable;

h.) as a respirator, contain no components made from natural rubber latex;

i.) are specifically designed to seal to the wearer's face, as fit and seal are critical to respirator performance.

21. Conversely, counterfeit respirators/masks are not tested and approved like authentic 3M respirators/masks. Instead, counterfeit respirators/masks are made by unknown fraudsters, using unknown processes and materials, with unknown or nonexistent quality controls.

CONCLUSION

22. Based on the forgoing facts, there is probable cause to believe that the property seized is subject to forfeiture under 18 U.S.C § 2323(a), which provides for the forfeiture of counterfeit property that is made or trafficked and/or used in violation of 18 U.S.C § 2320.

NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED if you assert an interest in the Defendant Property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  The verified claim must be filed no later than thirty-five (35) days from the date this complaint was sent to you in accordance with Rule G(4)(b.

An answer or a motion under Federal Rule of Civil Procedure 12 must be filed no later than twenty-one (21) days after filing the claim.  The claim and answer must be filed

with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

<u>RELIEF REQUESTED</u>

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Property in favor of the United States and will serve notice, along with a copy of the Complaint, on the property owner and on any other persons who reasonably appear to be potential claimants. The United States seeks a final judgment forfeiting the Defendant Property to the United States and any other relief to which the United States may be entitled.

Respectfully submitted,

Jennifer B. Lowery
Acting United States Attorney
Southern District of Texas

By:     *s/ Jon Muschenheim*
Jon Muschenheim
Assistant United States Attorney
Southern District of Texas
Texas Bar Number 14741650
One Shoreline Plaza, South Tower
800 N. Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
Phone: (361) 903-7905
Jon.Muschenheim@usdoj.gov

VERIFICATION

I, Kevin Fornfeist, a Special Agent employed by Homeland Security Investigations, declare under the penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 5-21 are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation, and they are true and correct to the best of my knowledge and belief.

Executed on the _30th_ day of _August_, 2021.

Kevin Fornfeist, Special Agent
Homeland Security Investigations